Case number 243054 Ryan Widmer v. Jossette Okereke. Oral argument not to exceed 15 minutes per side. Ms. Berry, you may proceed for the appellant. Thank you. Good morning, Your Honors. My name is Michelle Berry and I represent the appellant petitioner Ryan Widmer. I'd request three minutes for rebuttal. Fine. Thank you. Your Honors, this morning I'm going to focus on first the Brady and Napoui due process violations, followed by the due process violation based on the junk science argument, and then finally the DNA testing issue if there's time. Your Honors, first regarding the due process violation based on Napoui and Brady. These arguments are centered on the false testimony of the lead homicide detective in this case, Jeff Braley, who turned out to be a con man playing homicide detective, who gave false testimony about the authenticity of an application form and his background, work, and educational history, and also the state's failure to disclose additional fabrications. The state court relied on materiality of those issues and concluded that the items were not material because it had to do with his lying on an application form years earlier. If we need to defer under AEDPA, do you lose? No, Your Honor. This is a situation where even in light of the AEDPA deference standard, the state appellate court did make unreasonable factual determinations and determinations contrary to Supreme Court precedent. First off, regarding the materiality, I think on page ID 2570, the state appellate court actually applies the wrong standard and says that the evidence that was not disclosed, the most important being that Braley lied and claimed to be a U.S. Air Force paratrooper when actually he had no such experience whatsoever, and that his lies in that regard led the chief of police to hire him as the leader of the township SWAT Thor unit when he was actually just a civilian, just a high school graduate. Why would that be material? Because I thought they ultimately concluded, even if it was somehow material, that the Thor unit didn't have any issues as a result of that. Well, in this particular instance, his lies, his pattern of being a con man are directly at the heart of this case. They're not about some collateral issue like selling fake Louis Vuitton bags or being a shady used car salesman. They're specifically about rising through the ranks of the Hamilton County Police Department. Sure, but how do they get to the materiality vis-a-vis the jury's decision? Well, because, Your Honor, as a direct result of his lies, the defense subpoenas to further investigate his background were quashed. The trial court denied the defense motion to cross-examine the detective about his background, and most importantly, it led the state to fail to disclose this information about his lies about being in special forces and the chief's reliance on that. That hasn't answered the question. I get what the lies are. I get what happened. I guess how does it affect, how do you show that it had a material impact on the jury's decision? Yeah. Well, if what I just described had not happened, and say the defense had learned this material, he had told the truth and he knew it, the defense actually would have been centered around this argument that the entire investigation was not reliable because Jeff Braley himself was not a reliable investigator. He has an infamous quote in this case. I stepped into that house and I just knew something was bad, bad, wrong, something more than a tragic accident. Well, Don't you have the problem that he's never been adjudicated to have lied on his employment application? As I understand it, in the course of the litigation, he's never admitted that he lied on his employment, and there's never been an adjudication about that. So you could examine him for credibility, but it's on a disconnected topic to the criminal charges before the court. So there are some problems here that the whole case rests on this officer and his credibility. Well, first off, you're correct. There was never an adjudication that he lied about this by the court. They found the opposite. We'd submit that that's an unreasonable factual determination, but the DD&M report, the evidence in that, which was not disclosed to the defense, it's document 30-2. It starts at page ID 10349. It does a very good job of explaining why this was a lie, but setting that aside, that only is regard to the Napoo argument. The Brady violation, the court can find that he did not give false evidence, and it's still true that this evidence of his pattern of lying was not disclosed to the defense. I do want to explain why this was not collateral, but rather at the heart of the issue, and I think that's what your question is as well, Your Honor. Well, wait a minute, though. The police department didn't know about this themselves, about the purported lies on the application. So for Brady purposes, did they really have a duty to disclose anything? They did know, actually. The chief of police admitted that he hired Braley to be the head of the Thor unit based on his claims that he was in special forces of the U.S. Air Force. But he didn't know, the chief didn't know that the man allegedly had not been in that position. He did know that, because prior to the third trial, unbeknownst to the defense, the township actually conducted an internal investigation in which they interviewed Braley and Chief Duvalius and other members of the police force. But that was after the fact. When Officer Braley was sent to investigate this crime that's before us, at that time, the chief didn't, I guess, seemingly didn't know that the man had purportedly lied on his application. So all this occurred after the fact, this controversy about the application. You're saying, was the investigation conducted before they knew about the lies? Yeah, and that's actually the problem. Braley steps on the scene and all the officers look at him as the special forces elite paratrooper. Actually, he's just a high school graduate. He had since become commissioned as a police officer, but not for a while. This is a man who lied to get a volunteer chaplain position in the fire department and then the police force, and he actually did- But even assuming that you're correct so far, there was substantial evidence of guilt that was introduced at the third trial. So why is this so material as to whether Braley lied on his application to be a volunteer chaplain, or whether he lied about being a special forces paratrooper? And under EDPA, getting back to my original question, aren't we pretty much bound by the state court's determination that this was not material? Well, no, Your Honor. I think, first off, there was not other overwhelming evidence. If you look at footnote two in the reply to the state's response to the habeas petition, it's document 25, it goes through the five main categories of evidence that were presented in this case. Every single one of them was contested. Bruising, water on the scene, all of these things were contested, but a lot of that evidence came down to Braley's word. The whole suspicion about the fact that a homicide occurred was based on Braley, who had a fantasy of what the township's first ever homicide investigation was going to look like, what the scene was going to look like, and it didn't look like what he expected. So he gives that infamous quote, something's bad, bad, wrong here. What did he expect? He expected tons of water. When he didn't find that, he checked the dryer. The dryer hadn't been recently run. The cars hadn't been recently run. So he thought, hmm, there's not tons of water. There's no evidence that Ryan cleaned up water. He must have done this way earlier and staged the scene. So this is how all the detectives are looking at him. Oh, there should have been more water. Braley said it. There's two spots of blood on the carpet. Braley never even saw Sarah Widmer's body laying on the carpet, but he learned that the first responders didn't move her body. He's suspicious about this blood. Well, what he didn't realize is that one of the spots corresponded with her head, where some froth was coming out of her mouth. The other corresponded with her vaginal area. And thanks to the defense carefully looking at joint exhibit pictures, they found a feminine hygiene wrapper in the trash can. Was this collected into evidence? No, because Braley admittedly only conducted his investigation with homicide in mind. And it's pervasive. All the investigators, everyone working on that was under his leadership, and what he said went. Let me ask you this. Do you have other instances where this officer lied or a pattern of him lying in the carrying out of his police duties in previous cases? Or is it the only thing you have is that he lied on his application? Well, I don't know of other cases where he lied. All of these lies came to light during the Widmer case, if that's what you're asking. And I can't emphasize enough how highly material it actually is. Again, it's not like he's being a con man about, does he have thoroughbred puppies? His lies were a pattern all during his tenure of working at that police department of being Johnny on the spot. The DDMM report talks about the SWAT unit that they had was failing and they needed a new leader. Braley steps in. I can do it. I was on special forces of the US Air Force. The DDMM report was commissioned the day after the third trial concluded, is that correct? That's correct. So nobody knew what DDMM would uncover in terms of, for a fact, what they would uncover? Well, yes and no. Yes, it's correct that it was one day after, but what's highly important is before that, after the May 5th hearing happened where the tip of the iceberg of this was revealed, the Hamilton Township Board of Commissioners conducted their own internal investigation and never turned over the results of that. And they were identical to the DDMM. The results of that were available before the third trial? No, they were not. They were never disclosed to the defense. Okay, so in terms of Brady information, I'm not grasping what was the actual information that was not turned over at the end of the trial. All the contents of the DDMM report. But the DDMM report hadn't been even commissioned, let alone worked on. It's the mirror image, essentially, of the township's investigation that occurred prior to the third trial that involved the police department, which was in charge of investigating. So you're saying the police department did investigate him before the third trial? In conjunction with the Hamilton County Board of Commissioners. All the police force was interviewed about him, and this all occurred before the third trial. And the results, they were taken under, they were given interviews under oath, and this all occurred prior to the third trial. This is the police force that was investigating Sarah Widmer's death. But was there a report of the police force prior to the third trial? Whether there was a formal report written, the defense never found out. But certainly, they knew all this was happening. In fact, they did it specifically because of the May 5th hearing occurring, where the tip of the iceberg of Braley's lies were revealed. And the defense was attempting to investigate his background, which the trial court struck down. So the defense was prohibited from learning anymore, but behind the scenes, the Hamilton County Board of Trustees and the police department did an internal investigation of him that they never turned over. And then the day after, they did a public investigation. Thank you. Good morning, Your Honors. Catherine Mullen on behalf of the warden. In this case, we're asking this court to affirm the decision of the district court denying and dismissing Mr. Widmer's petition. Mr. Widmer has raised four issues for this court's consideration, which correspond to four of the grounds for relief that he raised in the district court. His challenge to the admission or exclusion of evidence, which you'll see in his appeal, those challenges are not cognizable in federal habeas. Nor can the federal court grant relief based on the state appellate court's interpretation of Ohio law. And that goes to the assignment of error related to the DNA post-conviction testing. Why isn't it, to get to the heart of what your opponent's arguing today, why isn't it totally material that Braley, who is the star investigator and later on the star witness, was known to have a questionable application form with questionable information on it? Why shouldn't that have been viewed as material to the case? Well, I have a couple answers to that, Your Honor. First, in the context of the false testimony issue, this court, I believe it's in Steep v. Angel, which I've cited in my brief, talked about how allegedly perjured testimony in a pretrial proceeding, in that case it was a grand jury testimony, was not offered at trial and therefore couldn't have affected the verdict in that case. What Mr. Widmer is attempting to do is to expand what the Supreme Court has already held, and we know that that's not an available option to him in habeas. But turning directly to your question about materiality, Your Honor, the state appellate court said specifically, this is a quote, Braley's testimony could not be described as extremely important, central, or material to the prosecution's case against Widmer. And that's from the 2013 opinion, which is 2013 Ohio 62 paragraph 84. Can you clarify, were you conducting an investigation at the time, during, before the third trial, the township, etc.? I'm not familiar with that, Your Honor. I'm familiar with the DD&M report, which was commissioned the day after Widmer's trial. I'm not familiar with dates of the township investigation. What about the May 5th? The May 5th, 2010, pretrial hearing happened in advance of the second trial, which resulted in a mistrial. And during that hearing, the defense had already had in their possession the 1996 application for employment, which was the subject of some of these claims. And using that application, they had sent subpoenas to Detective Braley's former employers. Detective Braley and the state both filed motions to quash. So the May 5th, 2010 hearing in advance of the second trial was regarding those motions to quash, which the court ultimately granted the motions to quash. The court also, in advance of the third trial, Detective, I'm sorry, Mr. Widmer had filed a motion, I believe he called it a motion to confront Detective Braley, attempting to confront him with the recent, the BCI report, which this court has in its possession. The BCI report found that although it could not entirely eliminate the possibility of, I'm going to use contamination for lack of a better term, that although it could not eliminate that issue, it appeared that the application was filled out and signed by Detective Braley. The defense wanted to confront Detective Braley about that at the third trial. And the trial court said no, using Ohio Evidence Rule 608. I'm sorry, I believe it might have been 806. But the court prohibited it under Ohio law, finding that it essentially would have caused confusion for the jurors and created a mini trial within this trial, which is exactly what that evidence rule seeks to prohibit. And again, as I mentioned at the outset, Your Honor, it's not recognizable in his federal habeas petition. But your opponent is arguing that Braley's testimony or Braley's involvement in the investigation was so crucial that they needed to be able to confront Braley with his own credibility issues. And that Braley's involvement, as they were portraying in the oral argument here, Braley's involvement colored the whole investigation. So what is your response to that? Well, first I disagree with that, Your Honor, as the state appellate court did in the citation that I provided. But I would also note, and this is in the report and recommendation, which was referencing the testimony in this case, Sergeant Lisa Elliott from the same department stated, I'm sorry, she testified that she called Braley because in her opinion things were, quote, not adding up. So she contacted Braley to the scene already believing that there was questions about the evidence that they were seeing. Investigator Burke also testified that he considered the death suspicious and found, quote, blaring inconsistencies in Widmer's testimony. So this is not the result of some overarching theme decided by Detective Braley. In fact, if this court looks to Sergeant Elliott's testimony and others, because there was other officers at the scene before Detective Braley arrived, that the questions about whether or not this might have been a homicide already existed because, to some degree, because of the inconsistencies that Widmer was providing. Notably, the fact that he had testified that he, or I'm sorry, that he had told the police that he was downstairs watching, I believe, the Cincinnati Bengals game, when in fact it was determined that that was not the case. But turning away from this idea of his determination, unilateral determination that this was a homicide, which is not true based on the record. One of the other things that Mr. Widmer likes to do is say, well, we would have used Detective Braley to claim that he contaminated the tub and then we could have cross-examined the state's expert Hillard on that topic. Well, the state court found, I'm sorry, the state court found that that issue had been waived. But it's also worth noting that Detective Hillard testified that he did not know if there was any contamination of the scene or of the tub. So, again, we don't have this overarching involvement by this rogue detective. And I do take issue with the fact that Detective Braley is being called a con man in the sense he began his employment, apparently, as an uncompensated chaplain. But at some point in that period of time, he did obtain an OPADA certification. He obtained the education necessary to become a police officer. He had spent a significant period of time working as a police officer. Yeah, but didn't this report that was commissioned after the third trial reveal that he was lying a lot about his background? So, the DDNM report says that, using the BCI report, the DDNM report says that Detective Braley appears to have been the one to fill out and sign the application, which Detective Braley admitted did not contain his correct employment history, but also testified that he did not fill out that application, that he did not recall filling out that application, and that he did not, even though the signature appeared to be his, did not recall signing that document. And if this court looks at that May 6th, I'm sorry, that May 2010 testimony, there are highly suspicious circumstances surrounding this employment application. But, so you have the DDNM report, which finds that Detective Braley, in all likelihood, did do that, and that he apparently told some officers and the chief that he had been involved in Special Forces. And even assuming that that's true, which... If it is true, and he wasn't involved with Special Forces, then he is lying about various aspects of his prior employment history, or lack thereof. Correct, Your Honor. And even assuming that that's true, the state trial court precluded the evidence of that application, and precluded questioning about it, under the Ohio Rules of Evidence. So that's not properly before this court as an issue. But in addition to that, it's a purely collateral matter. We're talking about something that happened over a decade before the homicide, in this case, occurred. It's a no... To switch a little bit, you mentioned the Hillard evidence. Why isn't the Hillard evidence, which has to do with the identification of smears on the bathtub, being an elbow or an arm, would you agree that that's junk science? I don't agree that it's junk science, Your Honor. I think Detective Hillard testified... Sorry, let me just... So what scientific method is there, analogous to arguably fingerprint analysis? That would be the closest, Your Honor. Detective Hillard testified that there is no scientific methodology to identifying body mark impressions. That was the testimony at trial. So this was based on... The admissibility of this evidence was based on his nearly 30 years as an investigator, as a criminalist, and it was based on his observations. He denied that it was based on what Widmer has referred to as the Bertillon method, if I'm stating that correctly. Are you saying then that even if this is not scientific, it's being admitted just because it is one examiner's view based on 30 years of working as a detective or whatever he... What was his official role, Hillard? I believe his official title was criminalist. And yes, that's correct, because there's no U.S. Supreme Court requirement that says that expert testimony has to be based on scientific methodology. And I think his testimony at trial was very clear, in fact, that it was not, and it was based on his experience and the observations that he saw. Mr. Widmer had an opportunity not only to cross-examine, but I believe he also had the opportunity to re-cross-examine Mr. Hillard. And any issues or concerns about that were entirely flushed out during the trial. It was also, again, it's just one piece of the puzzle in this case, because it's not the only piece of evidence. And sufficiency is not before this court, although it was raised in Mr. Widmer's petition. But the evidence in this case did not rely solely on Mr. Hillard's observations. In both instances, you're saying, don't worry, this isn't really that important. What is the key piece of evidence or pieces, what are the key pieces of evidence that you think are unassailable showings of guilt here? I think Sarah's, the injuries to the victim in this case are unassailable. I know that there was disagreement with the defense, but the injuries are there, and they speak for themselves. I think Mr. Widmer's changing stories are unassailable. He had stated that Sarah was found face down, then he stated that she was found face up, he stated that he was drinking. So we have those. We have the witness that had befriended Mr. Widmer that came forward and testified in the third trial that Mr. Widmer made a confession to. So we have multiple pieces of evidence outside of the bathtub observation by Mr. Hillard in this case. And the evidence, as both the state court found and the district court below, the primary argument that's being made here, which is this Detective Braley information from this DDM report, which did not exist before the third trial, is a collateral issue. It's not material. It's the evidence before the jury. It couldn't have possibly affected the jury's verdict because it didn't come out before the jury. Even if the DDM report had existed prior to then, the trial court had made a determination that that evidence wasn't admissible under the Ohio rules of evidence. There's no reason to think that the trial court would have, based on the DDM report, changed his mind and somehow allowed cross-examination on that topic. To suggest otherwise is purely speculation, which cannot satisfy Mr. Widmer's due process arguments. Turning briefly, Your Honors, to the fourth assignment of error, which is the post-conviction DNA. Ohio reviewed Ohio's law. And that's So Mr. Widmer is stuck with that for the purposes of his federal habeas petition. But there could be an equal protection violation. There could potentially be an equal protection violation, but he's not similarly situated because what he wants to do would not, as the district court found, would not prove his innocence. Don't you have to bring that under 1983 and not habeas? The challenge to the state's post-conviction, I believe, should have been brought under 1983, Your Honor. But regardless, the challenge that Mr. Widmer wants to bring, even if Sarah had long QT syndrome, that doesn't prove that he didn't kill her. And in fact, I think it was probably beneficial to Mr. Does he have to prove that he didn't kill her in order to get a new trial? That essentially that there was no offense. But even if she had long QT syndrome, that wouldn't prove that there was no offense. Because somebody with long QT syndrome can still be murdered, which is what the district court found. I see that I'm out of time, Your Honors. If there's no further questions, we'll rest. Thank you. Thank you. Your Honors, just to clear up a couple of points. Widmer is not relying on the state rules of evidence in this case, of course. He's relying on the U.S. Constitution and the argument under Kyle's v. Whitley that the defense brought before the trial court. So this isn't me being the Tuesday morning quarterback. This was brought before the trial court by the defense at the time, that they wanted to raise a Kyle's due process defense, and they were stopped from doing that. The timeline, the state knew of all of these lies, the special forces lies, the being put in front of Thor, in charge of Thor because of that lie. This was all known by the state and not turned over prior to the third trial. The timeline for this is laid out in the reply before this court. The state likes to say, and the state courts have said, Braley was a minor witness, and so this is collateral. Braley was a minor witness because the state trial court prohibited the defense from further investigating. If the defense, and if the state had turned over this information, the defense would have been all about Braley and the unreliability of the investigation. It's like painting somebody into a corner and then blaming them that they're in the corner. The state caused Braley to be a minor. He was a minor witness vis-a-vis guilt, not he was a minor witness for you all, that his testimony was not instrumental to the guilty verdict. But his role in the case was enormous, and the defense would have made that the center of their defense, as the defense attorney explained in his affidavit that's in the record, had the state turned over this information. It would have been the center of the defense. Turning to the ... Well, just one more point on that. The defense couldn't go further into it. If they had attempted to do so without knowing this information, not only did they not know the key facts about special forces, but they would have looked honestly like crazy conspiracy theorists. They would have been looking like they were grasping at straws. They didn't have anything to back up these claims. That is why the state's withholding of this information is so important. The application form, don't get hung up on that because that really was just the tip of the iceberg. This was a pattern that spanned his entire tenure and caused him to ultimately resign. Regarding the junk science, not too surprisingly, Braley had a hand in this as well. The bathtub was in a different condition when Bill Hillard got it and examined it and processed it for a third time after the Miami Crime Lab had already done it twice. Bill Hillard admits that the tub was not in the same condition as Danny Harness left it, and lo and behold, he finds a male forearm smudge, whatever that means. There's no established science to that. The state appellate court recognized that, and Widmer's not relying on the state rules of evidence. He's relying on the due process by the U.S. Supreme Court standard that unreliable evidence violates due process. If there are no further questions, Your Honor, I will rest. Thank you. Thank you. Thank you both for your argument. The case will be submitted.